559 A.2d 58

**COMMONWEALTH of Pennsylvania**

v.

**James McFADDEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 30, 1989.

Filed May 22, 1989.

Aaron C. Finestone, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before DEL SOLE, KELLY and HESTER, JJ.

HESTER, Judge:

Appellant, James McFadden, appeals from the judgment of sentence of seven-and-one-half-to-fifteen-years imprisonment imposed following his conviction by a jury of third degree murder and possessing instruments of crime. The charges arouse out of the strangulation, stabbing and axe murder of Vanessa Bailey in her apartment in Philadelphia on October 2, 1986. On appeal, appellant claims that: (1) the trial court erred in denying his motion to suppress his confession; (2) the trial court erred in permitting the admission of the murder weapons into evidence and in allowing

the prosecutor to cross-examine him about his confession; and (3) the evidence was insufficient to support the third degree murder verdict. We will discuss these contentions seriatim and will review the evidence introduced at trial in conjunction with our disposition of the third issue. We affirm.

First, appellant argues that his confession should have been suppressed since his waiver of his *Miranda* rights was not knowing or voluntary. Specifically, he alleges that the waiver was involuntary due to the following circumstances: he was intoxicated, his intelligence and education are limited (he is unable to read or write, having received only a first grade education), and he was intimidated by the police when they confronted him with statements that he made to his friends.

The Pennsylvania Supreme Court has recently commented on our standard of reviewing a suppression court's determination that a confession is admissible at trial. *Commonwealth v. Edwards,* 521 Pa. 134, 555 A.2d 818 (1989):

The suppression court, which hears the testimony, must decide whether the Commonwealth has established by a preponderance of the evidence that the statements of the accused were voluntary and the waiver of his constitutional rights was knowing and intelligent. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). "[T]he determination as to whether a knowing, voluntary and intelligent waiver was effected is to be made by viewing the totality of the circumstances." *Commonwealth v. Chacko,* 500 Pa. 571, 583, 459 A.2d 311, 317 (1983).

Our responsibility on review is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin,* supra 460 Pa. [516] at 521, 333 A.2d at [892] 895; [(1975)] *see Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974). In making this determination, this Court will consider only the

evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *See Culombe v. Connecticut,* supra 367 U.S. [568] at 604, 81 S.Ct. [1860] at 1878 [6 L.Ed.2d 1037]; [ (1961) ] *Commonwealth v. Goodwin,* supra 460 Pa. at 521, 333 A.2d at 895; *Commonwealth ex rel. Butler v. Rundle,* supra 429 Pa. [141] at 149–50, 239 A.2d [426] at 430. [ (1968) ]

*Commonwealth v. Kichline, supra.,* at 280–81, 361 A.2d at 290.

*Id.,* 521 Pa. at —————, 555 A.2d at 825–826.

 Appellant's first contention is that he was intoxicated at the time of his arrest. Initially, we note that "[t]he fact that the appellant had been drinking before his arrest does not automatically render his statements inadmissible." *Id.,* 521 Pa. at ——, 555 A.2d at 826. Evidence of alcohol consumption does not render a confession inadmissible, it only affects the weight to be accorded to the confession. *Id.,* 521 Pa. at ——, 555 A.2d at 827. Furthermore, the suppression court specifically found that appellant was not intoxicated. Notes of Testimony ("N.T."), 1/29/88, at 9–10. This finding is supported by the testimony of two police officers who observed appellant at the time of his confession. Their testimony established that appellant was speaking clearly, walking steadily, and did not act or appear to be drunk. N.T., 1/27/88, at 41, 44, 82–85, 109–110. *See Commonwealth v. Stark,* 363 Pa.Super. 356, 526 A.2d 383 (1987) (suppression court's finding that appellant was not under influence of alcohol affirmed when it was supported by police officer's testimony that appellant was alert, coherent and in control of his faculties).

 Next, appellant claims that his statement should have been suppressed since he has only a first grade education and cannot read or write. Again, the suppression court rejected this claim, finding that appellant understood the *Miranda* warnings since they were given orally and that he voluntarily and knowingly waived his rights. N.T.,

1/29/88, at 20–21, 29–30. This finding is supported by Detective Roger Harmon's testimony that he advised appellant of his rights and that appellant answered seven questions indicating that he understood his rights and wanted to waive them. N.T., 1/27/88, 73–77. Since the warnings and appellant's responses to the detective's questions were admittedly given orally, the fact that he could not read or write was irrelevant. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *see also Commonwealth v. Phillips,* 273 Pa.Super. 321, 417 A.2d 669 (1979). Furthermore, after appellant's statement was transcribed, Detective Archie Peay orally read it to him, and appellant, without requesting corrections, signed each page of it. N.T., 1/27/88, 108–09, 113–14. Since the record supports that appellant understood the contents of his confession prior to signing it, we affirm the suppression court's determination that his limited intelligence did not render it unknowing.

 Finally, appellant argues that the confession was the result of police intimidation, physical violence, and that police guided his signature. The suppression court specifically rejected appellant's testimony as to police violence and appellant's testimony that police had signed his name to the confession. N.T., 1/29/88, at 9, 30–32. In fact, appellant confessed once he was confronted with statements of two people, who told police that he had confessed. The police are permitted to confront a suspect with incriminating evidence. *Commonwealth v. Rose,* 483 Pa. 382, 396 A.2d 1221 (1979), and the confession appears to have been a result of this rather than any coercive police tactics. Since appellant's allegations are meritless, we reject his claim that his confession was constitutionally tainted.

Appellant's second issue relates to evidentiary rulings by the trial court. They are that the trial court erred in allowing 1) one of the murder weapons, a pen knife, to be introduced into evidence when the pen knife was not mentioned in the bill of information; 2) the jury to see the murder weapons; and 3) appellant to be cross-examined with his confession.

■ As to the pen knife, variance between information and proof at trial is harmless error unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right. *Commonwealth v. Lohr*, 503 Pa. 130, 468 A.2d 1375 (1983). Here, it is clear that appellant was not prejudiced since he had actual knowledge that the pen knife was going to be introduced at trial. At the suppression hearing, the admissibility of the pen knife was specifically litigated, N.T., 1/28/88, at 5–18; N.T., 1/29/88, at 26–27, and appellant did not raise his present objection. Accordingly, appellant anticipated the evidence and should have been prepared.

■ As to the murder weapons, it was within the trial court's discretion to allow the jury to see them. *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970) (trial court properly admitted two sections of tile-covered floor on which appellant banged victim's head); *Commonwealth v. Allen*, 239 Pa.Super. 83, 361 A.2d 393 (1976) (trial court properly permitted jury to examine blood-stained scissors used in assault).

■ Regarding appellant's cross-examination, we first note that a trial court's decision on the permissible scope of cross-examination will not be disturbed absent an abuse of discretion. *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846, 854 (1989). In this case, the prosecutor utilized appellant's confession to show inconsistencies between it and appellant's trial testimony. This was permissible. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977), *overruled on different grounds, Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981) (trial court properly permitted prosecutor to cross-examine appellant as to inconsistencies between trial testimony and prior statements to police); *see also Commonwealth v. Hussmann*, 335 Pa.Super. 603, 485 A.2d 58 (1984) (trial court properly permitted prosecutor to cross-examine appellant as to incon-

sistencies between trial testimony and prior deposition testimony in civil case).

■ Appellant's final request is that his conviction be overturned on the basis that the evidence was insufficient to support a conviction for third degree murder. His argument is that the police confession and his confession to a witness, James Irvin, demonstrate that he killed the victim in the heat of passion since she was unfaithful to him. Accordingly, he alleges, at most he was guilty of involuntary manslaughter.

Our standard of review on this issue is well-established:

> The test for the sufficiency of the evidence in a criminal case is whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. *See Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979). In making this determination, the reviewing court must view the evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

*Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267–1268 (1989).

The evidence introduced at trial established that on October 2, 1986, the victim, Vanessa Bailey, was struck twice in the head with an axe, stabbed with a knife in the throat, and strangled at her apartment. Philadelphia police officer Edward Heiser testified that he and his partner were called to the murder scene at 6:15 p.m. by James Irvin. Irvin, appellant, and a third man were waiting for them. Appellant was arrested in the hallway to the victim's apartment. An axe and pen knife were removed from the murder scene, but they were not dusted for fingerprints due to their surface composition, which was not conducive to finger imprinting.

Veronique Fredericks was also a witness, and she said that she saw appellant outside the victim's apartment at 5:30 p.m. on the day of the murder. Angela Boykins also testified. She was with the victim earlier that morning, helping to plan a party for the victim's boyfriend. When Boykins returned to the victim's apartment in early afternoon, appellant was with Vanessa. At that time, Vanessa displayed an axe which she apparently used for protection and wanted sharpened. Boykins stayed for fifteen minutes and left.

James Irvin testified that at around 4:30 p.m. on October 2, 1986, he and appellant were drinking with William Moore, Irvin's brother-in-law, at Moore's apartment, when Irvin and Moore began teasing appellant about getting in trouble with his wife over his affair with Vanessa. Appellant responded that he would, "kick [his wife's] ass," that he already had "one body" and that he could do the same to his wife. N.T., 02/05/88, at 37–38. When the two men disbelieved the murder confession and taunted appellant further, appellant insisted that he had killed (former Miss America) Vanessa Williams. He said that "he had hit her three times with an axe," *id.* at 45, because he "caught her wrong." *Id.* at 47. Irwin and More then realized that appellant was talking about his girlfriend Vanessa. Irvin immediately sent his niece to check the victim's apartment and, since there was no answer at the door, Irvin, Moore and appellant entered the victim's apartment and discovered her body. Irvin summoned police after confronting appellant, who stated that he wanted to "turn himself in." *Id.* at 42.

At the police station, appellant at first tried to blame Vanessa's death on Veronique Fredericks who had argued with Vanessa earlier that afternoon about money missing from Vanessa's apartment. When confronted with Irvin's statement about his confession, appellant recanted and gave the following version of the events:

A "Question: Mr. McFadden, you indicated that you are willing to tell us the truth about this murder; is that correct?

"Answer: Yes.

"Question: Will you now go in your own words and tell us about this incident, the beating death of Vanessa Bailey?

"Answer: The first part is true up until the part when I said I went back to the apartment and found the body. I did go home after Vanessa and [Veronique] were arguing.

"When I went back to Vanessa's house, I knocked on the door and Vanessa let me in. She was playing oldies but goodies records. She was playing the radio loud. I asked her who all the [expletive] liquor was for. She said she was giving her old man a party. I asked her if she was giving me a party. She said it damn sure wasn't me. I asked her who [expletive] she think she was talking to. She went into the bedroom—

. . . .

[A]nd got the axe and came back into the living room. I grabbed the axe out of her hand and popped her up side the head with it. I hit her one time with the handle part. Then I dropped the axe on the floor, turned around and walked out the door.

"Question: Did you see her fall?

"Answer: I don't know. I didn't care. I was so mad.

"Question: Where did you go after leaving Vanessa's house?

"Answer: I went home to check on my kids and to see who was in the house. This was about three or four o'clock. I stayed there for about five minutes. Then I went around to [William Moore's house] to get a drink. I told [Moore] that she was laying on the floor, that I hit her.

. . . .

"Question: Why did you get mad over the party?

"Answer: Because I was giving Vanessa a hundred dollars a week and she was spending it on another man.

"Question: Have you ever had any altercations with Vanessa before?

"Answer: I have been with her for five years and never laid a hand on her."

*Id.* at 67–69.

We concur with the jury's determination that the fact that appellant's paramour was having a party for another man is not "serious provocation" under 18 Pa.C.S. § 2503. The jury's convictions are based on sufficient evidence.

Judgment of sentence affirmed.