J-S67035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABDOU IDRRISSA, | |
| Appellant | No. 564 MDA 2015 |

Appeal from the Judgment of Sentence January 21, 2015
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0001945-2009

BEFORE: BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JANUARY 13, 2016**

Appellant, Abdou Idrrissa, appeals from the judgment of sentence imposed on January 21, 2015, following his jury conviction of rape of an unconscious victim and indecent assault of an unconscious person.[1] On appeal, Appellant challenges the denial of his motion to suppress his statement to the police, and claims that the verdict was against the weight of the evidence and that his sentence was excessive and unreasonable. For the reasons discussed below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(a)(3) and 3126(a)(4).

We take the underlying facts and procedural history in this matter from the trial court's August 20, 2015 opinion and our independent review of the certified record.

. . . [O]n December 31, 2008, [the victim] lived in an apartment [in] Harrisburg, PA. Prior to [that date, the victim's] sister, [ ] had been staying with her until she was arrested for a probation violation. [The victim] knew [Appellant] through [her sister] although she was not sure whether they were in a "dating relationship" or if it was "a fling." It was not until prior to trial that [the victim] questioned her sister about the relationship and found out that [the sister and Appellant] were in a sexual relationship.

. . . On December 31, 2008, [the victim] was at her friend['s] house, who was also her neighbor, when she received several calls on her cell phone from [Appellant]. He was asking if he could come by her apartment to help [the sister] "put money on her books," meaning placing money in her personal account in the work release facility where she was being detained. [Appellant] was insistent about coming over, but [the victim] kept telling him it was too late.

[The victim] returned to her apartment at approximately 11:00 p.m. and proceeded to take the prescription medication Lexapro and Tylenol P.M. She immediately went to bed fully clothed in pajamas including a bra. She claimed that she just passed out. She later awoke to a knock at the door at approximately 3:00 a.m., and when she answered, [Appellant] was at her door. He asked to use the restroom so, [the victim] let him in. [The victim] testified that she did not wait for him to finish in the bathroom; instead, she went back to bed and "passed out."

Later she awoke to find her pants and underwear at her ankles[,] which scared her and prompted her to call her mother. She called her mother and her friend, [ ], multiple times until one of them answered the call. Her mother called back at approximately the same time that [her friend] arrived at the apartment with police. [The victim's mother] instructed her to touch her vaginal area and smell. She . . . did as her mother instructed and smelled the odor of latex. [The victim]

- 2 -

acknowledged that a condom was not found at the scene and that she likely did not have condoms in her apartment at the time. She also stated that when she awoke, one of her breasts was out of her bra cup. [The victim had] no knowledge of what had happened for her to wake in the described state of undress. [The victim] remained on her bed in the condition in which she awoke until the police arrived and, ultimately, the paramedics took her to the emergency room by ambulance.

While at the hospital, a nurse conducted a physical examination and completed a rape kit. [The victim] admitted to the nurse that she had used marijuana earlier in the evening and that prior to bed she had taken Lexapro and Tylenol P.M. She relayed the details she could remember about what had happened that night to the nurse. [The victim] eventually appeared for an interview with Det[ective Manuel] Rivera [of the Harrisburg Police Bureau] to provide a statement summarizing her version of the events of December 31, 2008. She agreed to place a phone call to [Appellant], that would be recorded, during which she would act as if she remembered and enjoyed the sexual encounter for the purpose of eliciting any additional evidence of the crimes.

With respect to any relationship with Appellant, [the victim] stated that she neither had a conversation with [Appellant] about any type of sexual relationship nor actually had sex with him. At the time of the incident, she was involved in a seven year relationship with a woman . . . who she referred to as her fiancée. She stated that she did not have a boyfriend at the time and that she is not sexually attracted to men.

In December 2008, Stefanie Zeller, RN ("Nurse Zeller") was an ER nurse at Harrisburg Hospital who had also been certified as a SAFE nurse which training qualified her to examine sexual assault victims. Nurse Zeller was called in for duty in the ER when [the victim] was admitted for an examination. According to Nurse Zeller, [the victim] relayed to her that, on December 31, 2008, she had let a male acquaintance into her residence, fell back to sleep and when she later woke discovered that she was undressed from the waist down and smelled the odor of latex. [The victim] disclosed to Nurse Zeller that she had smoked marijuana and had taken Lexapro and Tylenol P[.]M[.] that day. Nurse Zeller proceeded to examine [the

victim] for the purpose of completing a rape kit to collect any possible evidence of the alleged sexual assault.

Nurse Zeller conducted an overall physical examination and a physical examination of the vagina and anus. A saliva specimen, vaginal swab, and an oral swab were collected from [the victim] and her pubic hair was combed. During [ ] her examination, Nurse Zeller did not observe any bruising on [the victim's] body or trauma to the vaginal vault. According to Nurse Zeller, [the victim] did not report any pain but she was clearly upset. . . .

* * *

Det. Rivera . . . oversaw the resulting investigation. On the morning of December 31st, he met with [the victim] who ultimately provided a recorded statement recounting her version of events. By the time of trial however, the transcription of the statement was not available because the written version was lost and the memory of the transcribing secretary's computer had been wiped clean due to her retirement.

[The victim] agreed to participate in a wiretapped phone call to [Appellant] for the purpose of gaining further evidence of the incident and to determine his last name and address. Det. Rivera and another officer coached [the victim] on what she should say during the conversation that might elicit an admission relating to the crime or any other identifying information. After several attempts to contact [Appellant], he returned a call[,] which was captured by recording on January 8, 2009. . . .

During the conversation, [Appellant] admitted to having sexual intercourse with [the victim] on December 30, 2008, while she was asleep, which information led to his arrest on February 4, 2009. During the recorded conversation, [Appellant] said that he knew [the victim] did not remember what had happened and that he tried to wake her up. He explained that he thought she [would] be mad about the encounter, so he left the area.

(Trial Court Opinion, 8/20/15, at 4-9) (record citations omitted).

On July 13, 2009, the Commonwealth filed an information charging Appellant with the aforementioned crimes and other related offenses. On the date scheduled for trial, January 11, 2010, Appellant failed to appear and the trial court issued a bench warrant. Appellant was apprehended in Brooklyn on January 18, 2014. On October 15, 2014, Appellant filed a motion to suppress his statements to the police. The trial court held a suppression hearing on October 20, 2014, following which the court denied Appellant's motion.

> . . . The suppression hearing established the following facts: [Appellant] was arrested on February 4, 2009, and interviewed by [Det. Rivera]. Det. Rivera became aware that [Appellant] was of African ethnicity but, spoke English. He later learned that [Appellant] was from Niger and [Det.] Rivera explained that, even though he did not recall specifically asking, he knew Niger was a French speaking country. Det. Rivera stated that although [Appellant's] English was not "the best English," he was able to comfortably communicate in English without a problem. Prior to the commencement of the verbal interview, Det. Rivera spent approximately five [ ] minutes going over his **Miranda**[2] warnings to reassure himself that [Appellant] understood his rights. The specific legal warnings conveyed to Appellant included his right to remain silent, his right to counsel prior to speaking to police, the right to have counsel appointed if he could not afford an attorney, the fact that any statements could be used against him in a court of law, and his right to stop speaking to police at any time despite beginning an interview. After explaining the allegations against him and when he was sure that Appellant understood that he was waiving his **Miranda** rights, Det. Rivera began a verbal interview during which Appellant provided his version of events. [Det.] Rivera stated that during the interview, he received no indication that Appellant did not understand the discussion and if

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

he did not understand something, [Appellant] asked for clarification.

The verbal interview lasted approximately [fifteen-twenty] minutes. Afterwards, [Appellant] agreed to give Det. Rivera a recorded statement. The transcript of the recorded statement as well as the recording itself was admitted into evidence at the suppression hearing.

[Appellant] also testified at the suppression hearing. [Appellant] moved to the United States from Niger in October of 2005. In his native country he spoke Hausa and French. Upon arrival, he got job working for an American company where other French speaking Niger natives worked, some of whom could translate directions from English. [Appellant] paid money to marry an American woman, who did not speak Hausa or French, for the purpose of obtaining "legal papers." While he was married from 2006-2008, his wife only spoke English. Additionally, [Appellant] was an acquaintance of the victim, [ ] with whom he only spoke English as she did not speak Hausa or French.

Regarding the recording of the interview with Det. Rivera, Appellant stated that he understood he was waiving certain constitutional rights but[] thought he was obliged to answer. [Appellant] stated that he was nervous and the fact that Det. Rivera was in plain clothes while carrying a gun meant that he was required to answer everything he said. [Appellant] never asked for an interpreter; rather, he assumed that it was the police officer's job to ask.

(Trial Ct. Op., at 2-4) (record citations and footnotes omitted).

A jury trial took place on October 20 through 22, 2014, at which time, the jury found Appellant guilty of the aforementioned offenses. On January 21, 2015, the trial court sentenced Appellant in the upper end of the standard range of the guidelines to a aggregate term of incarceration of not less than sixty-six nor more than one hundred thirty-two months. (*See* N.T. Sentencing, 1/21/15, at 10-11). On January 30, 2015, trial counsel filed

both a motion to withdraw his appearance and a post-sentence motion challenging the weight of the evidence and seeking a modification of sentence. (*See* Appellant's Post-Sentence Motion, 1/30/15, at unnumbered pages 2-3). On February 3, 2015, the trial court granted counsel's request to withdraw. On February 24, 2015, the trial court denied Appellant's post-sentence motion.

On March 12, 2015, Appellant, despite now being represented by the Dauphin County Public Defender's Office, filed a *pro se* petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. On March 20, 2015, the trial court appointed counsel to represent Appellant. On March 26, 2015, appellate counsel filed the instant, timely appeal from the judgment of sentence. On April 16, 2015, the trial court concluded that Appellant had prematurely filed his PCRA petition, vacated the appointment of PCRA counsel, and dismissed the petition without prejudice. On April 17, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on May 7, 2015. On August 20, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.

I. Whether the trial court erred in denying Appellant's [s]uppression [m]otion where he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights, in violation of Article I, Section 9 of the Pennsylvania Constitution and the Fifth Amendment to the United States Constitution?

II. Whether the trial court erred in denying Appellant's [p]ost-[s]entence [m]otion where his convictions were against the weight of the evidence so as to shock one's sense of justice where Appellant was not shown to have engaged in acts which constitute the offenses of which he was convicted?

III. Whether the trial court erred in denying Appellant's [p]ost-[s]entence [m]otion where his sentence is excessive and unreasonable and constitutes too severe a punishment in light of the gravity of the offense, Appellant's rehabilitative needs, and what is needed to protect the community?

(Appellant's Brief, at 7) (unnecessary capitalization, justification and underlining omitted).

In his first claim, Appellant argues that the trial court erred in denying his motion to suppress his statement to the police because he was unable to make a knowing waiver of his *Miranda* rights because of his poor grasp of the English language. (*See id.* at 14-16). We disagree.

When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the Commonwealth, we will consider only the testimony of the Commonwealth's witnesses and any uncontradicted evidence supplied by Appellant. *See id.* If the evidence supports the suppression court's factual findings, we can

reverse only if there is a mistake in the legal conclusions drawn by the suppression court. *See id.*

Appellant has waived this claim. Appellant's conclusory argument that his motion should have been granted because of his difficulties with the English language is, with the exception of a general citation to ***Miranda***, completely devoid of relevant legal authority. He also completely ignores our standard of review, citing to elements of Appellant's testimony that were contradicted by the Commonwealth's evidence to support his argument, it is therefore waived. ***See Commonwealth v. Cotto***, 753 A.2d 217, 224 n.6 (Pa. 2000) (meaningful appellate review is not possible where argument consists only of bald assertions unsupported by citation to authority or pertinent discussion of point).

Moreover, his assertions are without merit. Generally, statements made during custodial interrogation are presumptively involuntary, unless the police first inform the accused of his ***Miranda*** rights. ***See Commonwealth v. DiStefano***, 782 A.2d 574, 579 (Pa. Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002). Further:

> The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review. Moreover, the totality of the circumstances must be considered in evaluating the voluntariness of a confession. The determination of whether a defendant has validly waived his ***Miranda*** rights depends upon a two-prong analysis: (1) whether the waiver was voluntary, in the sense that defendant's choice was not the end result of governmental pressure, and (2) whether the waiver was knowing and intelligent, in the sense

that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

***Commonwealth v. Mitchell***, 902 A.2d 430, 451 (Pa. 2006), *cert. denied*, 549 U.S. 1169 (2007) (citations omitted).  "Only if the totality of the circumstances surrounding the interrogation reveals **both** an uncoerced choice **and** the requisite level of comprehension may a court properly conclude that the ***Miranda*** rights have been waived."  ***Commonwealth v. Cephas***, 522 A.2d 63, 65 (Pa. Super. 1987), *appeal denied*, 531 A.2d 1118 (Pa. 1987), *cert. denied*, 484 U.S. 981 (1987) (emphasis added) (internal quotation marks omitted).  The Commonwealth has the burden to prove "by a preponderance of the evidence that the waiver is also knowing, and intelligent."  ***Id.*** (emphasis omitted).

When assessing voluntariness the court should look at the following factors:  "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors which could drain a person's ability to withstand suggestion and coercion."  ***Commonwealth v. Nester***, 709 A.2d 879, 883 (Pa. 1998).  ***See also Commonwealth v. Sanabria***, 385 A.2d 1292, 1294-95 (Pa. 1978) (holding appellant's waiver of ***Miranda*** rights was knowing, voluntary, and intelligent despite appellant's claimed difficulty in understanding English; appellant's ability to communicate effectively in English with police before and after his arrest belied his claims); ***Commonwealth v. Padilla***, 854 A.2d 549, 552-53

- 10 -

(Pa. Super. 2004) (holding appellant possessed sufficient fluency in English to understand verbal communication despite his inability to read or write English; statements made after police read **Miranda** warnings in English did not require suppression); **Commonwealth v. McFadden**, 559 A.2d 58, 60 (Pa. Super. 1989), *appeal denied*, 568 A.2d 1246 (Pa. 1989) (inability to read and write English did not invalidate otherwise knowing, voluntary, and intelligent **Miranda** waiver).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude Appellant's first issue merits no relief. The trial court credited the testimony of Det. Rivera that Appellant understood and spoke English and did not credit Appellant's testimony to the contrary. (**See** Trial Ct. Op., at 11). We must defer to that finding. **See Commonwealth v. Walker**, 874 A.2d 667, 671 (Pa. Super. 2005). Further, the trial court reviewed the evidence underlying its decision as follows:

> Review of the record reveals Det. Rivera's interaction with [Appellant] began with his arrival at the police station after his arrest at approximately 7:45 a.m. Appellant was **Mirandized** when he was arrested and Det. Rivera went over his constitutional rights again prior to his verbal interview[,] which lasted [fifteen-twenty] minutes. The parties began recording the statement at 8:39 a.m. Clearly [Appellant] was not held for any great length of time prior to the interview and the questioning was of a very short duration. Further, as pointed out by Appellant's counsel, approximately [fifteen] minutes of the overall interaction was dedicated to Det. Rivera explaining his constitutional rights and ensuring that [Appellant] understood what was happening and what he was agreeing to do. The record is void of any evidence of coercion or an indication that

[Appellant] was deprived of sleep, medication, food or drink. If Det. Rivera had any indication that [Appellant] was not understanding, such as when they were discuss[ing] a slang term of a sexual nature, he made sure to state or explain the term in other ways to ensure Appellant's understanding. With respect to his inexperience with the criminal justice system, this [c]ourt finds [Appellant's] claim without merit. The record clearly highlights that he admittedly had enough knowledge of the legal system to know how to circumvent it by finding a woman whom he could pay to enter into a sham marriage so he could legally stay in this country. Finally, the recording of [Appellant's] statement establishes a free flowing conversation during which there were no unresponsive answers that would indicate any language barrier or misunderstanding.

Therefore, in conclusion, this [c]ourt finds that the record amply supports the finding that Appellant voluntarily and knowingly waived his **Miranda** rights; as such, the denial of Appellant's [s]uppression [m]otion was proper.

(Trial Ct. Op., at 13-14). The record supports the trial court's conclusion that Appellant's statements were knowingly, intelligently, and voluntarily made. **See Sanabria**, **supra** at 1294-95; **Padilla**, **supra** at 552-53; **McFadden**, **supra** at 60. Thus, even if Appellant had not waived the claim, Appellant's first issue lacks merit.

In his second claim, Appellant argues that his conviction was against the weight of the evidence because the victim's testimony was not credible. (**See** Appellant's Brief, at 16-18). We disagree.

Initially, we note that Appellant waived this claim because his argument is completely devoid of citation to any legal authority. **See In re C.R.**, 113 A.3d 328, 335-36 (Pa. Super. 2015) (finding weight of evidence claim waived where appellant failed to cite to any legal authority).

In any event, the claim is without merit.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim, noting that fact-finding and credibility determinations were matters for the

- 13 -

jury. (**See** Trial Ct. Op., at 16). We agree. The record reflects that the jury chose to credit the testimony of the victim and chose to reject the defense's theory of the case. The jury, sitting as finder of fact, was free to believe the Commonwealth's witnesses and to disbelieve the defense. **See Commonwealth v. Griscavage**, 517 A.2d 1256, 1259 (Pa. 1986). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." **Commonwealth v. Lee**, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted). Thus, even if Appellant had not waived his weight of the evidence claim, it is without merit.

In his final claim, Appellant argues that his sentence was excessive and unreasonable because his fiancée testified that his is a "loving, compassionate, loyal, and dedicated man[,]" who is loved in the community. (Appellant's Brief, at 18) (record citation omitted). We disagree.

Preliminarily, we note, "[i]ssues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. McAfee**, 849 A.2d 270, 275 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004) (citations and internal quotations marks omitted). Here, Appellant properly preserved his claim by filing a post-

sentence motion. (**See** Appellant's Post-Sentence Motion, 1/30/15, at unnumbered pages 2-3).

The right to appeal the discretionary aspects of a sentence is not absolute. **See McAfee**, **supra** at 274. When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" **Commonwealth v. Anderson**, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." **Commonwealth v. Kimbrough**, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). If an appellant's Rule 2119(f) statement meets these prerequisites, we determine whether a substantial question exists. **See Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** (emphases in original).

Here, Appellant has included a Rule 2119(f) statement in his brief. (**See** Appellant's Brief, at 11-13), arguing that his sentence was harsh and

excessive because his fiancée testified that he was a good person.  (*See id.* at 12-13).  This Court has held that "a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim."  ***Commonwealth v. Fisher***, 47 A.3d 155, 159 (Pa. Super. 2012), *appeal denied,* 62 A.3d 378 (Pa. 2013) (citation omitted). Thus, because this claim is a bald allegation of excessiveness and does not raise any challenge in the claim itself or in the brief as to a violation of the Sentencing Code or a particular fundamental norm underlying the sentencing process, we find that it does not raise a substantial question.  ***See id.***

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2016