J-A23035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                         :
              v.                        :
                                         :
                                         :
ALEX OTERO-SANCHEZ          :
                                         :
             Appellant             :    No. 3583 EDA 2019

Appeal from the Judgment of Sentence Entered August 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005382-2018

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED OCTOBER 23, 2020**

Alex Otero-Sanchez (Otero-Sanchez) appeals from the August 8, 2019

judgment of sentence imposed by the Court of Common Pleas of Philadelphia

County (trial court) following his convictions for first-degree murder and

possession of an instrument of crime. Otero-Sanchez argues that the

evidence was insufficient to support his convictions and that his convictions

were against the weight of the evidence. He also challenges two of the trial

court's evidentiary rulings. After careful review, we affirm.

**I.**

We glean the following facts from the trial court opinion:

Shortly before 4:00 a.m. on June 25, 2018, [Otero-Sanchez] and
his then-girlfriend, Rachel Rodweller, left their home on 618 East
Clementine Street in Philadelphia to buy cigarettes and drugs

_____

[*] Retired Senior Judge assigned to the Superior Court.

nearby on the block. [Otero-Sanchez] was missing his left leg, but got around that morning using a bike. [Otero-Sanchez] and Rodweller headed down the street toward a drug dealer they knew named Will. Rodweller, who was ahead of [Otero-Sanchez], ran into the decedent, Jamie Robinson, and began to talk with him. A few minutes later, [Otero-Sanchez] arrived and asked Robinson why he was talking to [Otero-Sanchez's] wife. In response, Robinson said, "That's not your wife," and Rodweller stated, "No, I'm not his wife, I'm his girlfriend." This exchange prompted Robinson to start laughing and to mock [Otero-Sanchez]. In response, [Otero-Sanchez] lifted his shirt and pulled out a knife. He then went behind Robinson and stabbed him with the knife on the right side of his stomach, just below the rib cage. After [Otero-Sanchez] twisted the knife and pulled it out of Robinson's stomach, Robinson fell to the ground. Robinson was able to pick himself up from the ground and run down to the end of the block. [Otero-Sanchez] initially began to follow Robinson, but after Rodweller started yelling at [Otero-Sanchez], he followed Rodweller back to their house on Clementine Street. Shortly thereafter, Rodweller asked [Otero-Sanchez] why he had stabbed Robinson. [Otero-Sanchez] responded, "He disrespected me and I'm a killer."

Meanwhile, Robinson made his way down Clementine Street, turned right onto F Street, and eventually collapsed in the area of F and Clearfield Streets. Officers, who responded to a report of a stabbing, found Robinson laying in a pool of his own blood and rushed him to Temple Hospital. Shortly after arrival, Robinson was pronounced dead. The cause of death was a 5 inch deep stab wound to the stomach.

After returning home, [Otero-Sanchez] wrapped the knife he had used to stab Robinson in the clothing he was wearing at the time of the killing. He placed the clothing and knife in two plastic bags, and dropped them in a trash can on the corner of F and Clementine Streets. Two days later, [Otero-Sanchez] saw a man he knew named Angel who pushed around a cart and collected cans. [Otero-Sanchez] pointed to the trash can, told Angel that he had killed someone with a knife and the knife was in a bag in the trash can. He then asked Angel to get rid of the knife. Angel agreed and took the bag with the knife from the trashcan. Sometime later, [Otero-Sanchez] saw Angel and Angel gave him a thumbs up.

The day after the stabbing, Gloria Resto, who also lived with [Otero-Sanchez] and Rodweller at the Clementine Street home, overheard an argument between [Otero-Sanchez] and Rodweller in the home. When Resto attempted to calm [Otero-Sanchez] down, [Otero-Sanchez] said to Rodweller, "Tell her what I did, tell her what I did." When Rodweller did not respond, [Otero-Sanchez] said to Resto, "Yeah, he disrespected [Rodweller], he touched her ass....I fucked him up and I fucked him up real bad." Within a day or two of that conversation, [Otero-Sanchez] left the home and did not return.

After Robinson's death, Philadelphia police detectives conducted an investigation of the murder. Officers located and recovered surveillance video from around the location of the stabbing. Four days after the murder, on June 29, 2018, officers went to the Clementine Street home and requested that Rodweller come with them and give a statement about the stabbing. Rodweller agreed and gave a statement to detectives, in which she identified [Otero-Sanchez] as the individual who stabbed Robinson. Shortly thereafter, [Otero-Sanchez] was arrested. He later gave a video statement to detectives, in which he admitted to stabbing Robinson.

Trial Court Opinion, 2/3/2020, at 2-4 (citations & footnotes omitted).

Following the reception of the evidence, the jury found Otero-Sanchez guilty of the above-mentioned offenses and he immediately proceeded to sentencing. The trial court sentenced him to life in prison on the count of first-degree murder and a concurrent period of one to five years' incarceration on the count of possession of an instrument of crime. Otero-Sanchez filed a timely post-sentence motion, which the trial court denied. He timely appealed, and he and the trial court have complied with Pa.R.A.P. 1925.

**II.**

Otero-Sanchez first challenges the sufficiency of the evidence to support his convictions.[1] He argues that he should have been convicted of the lesser offense of voluntary manslaughter rather than first-degree murder, because he committed the killing while under serious provocation and in the "heat of passion." He further argues that his conviction for possession of an instrument of crime should be vacated because he did not intend to use the knife criminally when he was acting under the heat of passion.

---

[1] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lopez***, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

- 4 -

A person is guilty of first-degree murder if the Commonwealth establishes beyond a reasonable doubt "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Thomas*, 54 A.3d 332, 335 (Pa. 2012); 18 Pa.C.S. 2502(a). Both first-degree murder and voluntary manslaughter require proof of a specific intent to kill. *Commonwealth v. Towles*, 208 A.3d 988, 999-1000 (Pa. 2019). The heat-of-passion defense reduces the charge of first-degree murder to voluntary manslaughter if the accused committed the killing while "acting under a sudden and intense passion resulting from serious provocation." 18 Pa.C.S. § 2503(a); *Commonwealth v. Williams*, 176 A.3d 298, 313 (Pa. Super. 2017).

> In order to successfully argue heat of passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man who was confronted with the provoking events would become "impassioned to the extent that his mind was incapable of cool reflection," and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing.

*Williams, supra* (citations omitted). "Emotions encompassed by the term 'passion' include 'anger, rage, sudden resentment or terror which renders the mind incapable of reason.'" *Commonwealth v. Hutchinson*, 25 A.3d 277, 314 (Pa. 2011) (quoting *Commonwealth v. Miller*, 987 A.2d 638, 650 (Pa. 2009)). The standard for determining whether provocation was sufficient to support the heat of passion defense is an objective one. *Id.*

Otero-Sanchez argues that Robinson provoked him into the heat of passion by talking to Rodweller and mocking Otero-Sanchez for referring to her as his wife rather than his girlfriend.[2] He points out that he is disabled and that the victim was intoxicated at the time of the interaction. He contends that the victim's "disrespect" enraged him such that he lost his temper and acted in the heat of passion and anger when he stabbed the victim. Finally, he argues that the single stab wound shows that he lashed out in momentary, uncontrollable anger.

The brief interaction between the victim, Rodweller, and Otero-Sanchez does not establish the type of provocation contemplated by the voluntary manslaughter statute that would result in a reasonable person becoming "impassioned to the extent that his mind was incapable of cool reflection." *Williams, supra*. Courts have previously rejected the heat-of-passion defense in cases involving interpersonal conflicts when the evidence did not establish that the conflict was so severe as to "render[] the mind incapable of reason." *Hutchinson*, *supra* (citation omitted); *see also Commonwealth v. Frederick*, 498 A.2d 1322, 1325 (Pa. 1985) (no evidence to support heat-

---

[2] Otero-Sanchez also argues that Robinson "inappropriately touched" Rodweller during the exchange, contributing to his anger and causing him to lose his temper. *See* Otero-Sanchez's Brief at 40. However, Rodweller denied that Robinson touched her during their interaction. Notes of Testimony, 8/7/19, at 82. As our standard of review requires this court to view the evidence in the light most favorable to the Commonwealth, *Lopez, supra*, we accept Rodweller's version of events in our analysis.

of-passion defense when victim and defendant were engaged in a "stormy love affair" and were seen arguing the day of the murder); ***Commonwealth v. McFadden***, 559 A.2d 58, 62 (Pa. Super. 1989) (defendant failed to establish adequate provocation when the victim, the defendant's paramour, told the defendant that she was hosting a party for another man immediately prior to the murder). The defense is more appropriate in situations where, for example, the defendant or his or her family was threatened with bodily harm. ***See Commonwealth v. Berry***, 336 A.2d 262, 264-65 (Pa. 1975) (voluntary manslaughter instruction was warranted when defendant came upon scene where the victim had physically attacked the defendant's mother); ***Commonwealth v. Duffy***, 512 A.2d 1253, 1261 (Pa. Super. 1986) (provocation was established for conviction for voluntary manslaughter when the victim slammed the defendant against a wall and fired three shots at him before the defendant shot the victim).

Here, Robinson approached Rodweller and began talking to her while she was buying narcotics with Otero-Sanchez. Otero-Sanchez told Robinson to stop talking to his "wife" and Rodweller responded by saying that she was not his wife but his girlfriend. Robinson laughed at Otero-Sanchez and mocked him for calling Rodweller his "wife" and Otero-Sanchez responded in anger by stabbing Robinson in the torso. Under the objective test for provocation, ***Hutchinson, supra***, we conclude that this interaction was not the type that would cause a reasonable man to become incapable of cool

reflection. There is no evidence to suggest that Robinson threatened either Otero-Sanchez or Rodweller with bodily harm during the exchange or that Robinson and Rodweller were engaged in a sexual relationship. The record shows that Otero-Sanchez's reaction to perceived "disrespect" was disproportionate to Robinson's actions, which were not the type of provocation that would cause a reasonable person to become "incapable of cool reflection." *Williams, supra*. This claim fails.

Otero-Sanchez's challenge to the sufficiency of the evidence to support his conviction for possession of an instrument of crime hinges on his assertion that he acted in the heat of passion. A person may be convicted of possession of an instrument of crime if he or she "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). Otero-Sanchez argues that he could not intend to employ his knife criminally when he was acting under the heat of passion as opposed to acting with malice and the specific intent to kill. However, the record amply supports Otero-Sanchez's conviction for first-degree murder with evidence of malice and specific intent to kill. Otero-Sanchez used a deadly weapon, his knife, on a vital part of Robinson's body, his torso. It is well-established that such actions are sufficient to support a conviction for first-degree murder. *Commonwealth v. Cash*, 137 A.3d 1262, 1269 (Pa. 2016) ("[T]he specific intent to kill may be inferred where . . . the accused uses a deadly weapon on a vital part of the victim's body."). As Otero-Sanchez intentionally used the knife to commit first-degree

murder, the evidence is sufficient to support his conviction for possession of an instrument of crime.

## III.

Next, Otero-Sanchez argues that the trial court abused its discretion by denying his motion for a new trial and holding that the verdict was not against the weight of the evidence.[3,4] In essence, he argues that the jury failed to afford appropriate weight to Robinson's actions toward Rodweller, which provoked him into committing the murder in the heat of passion. He argues that based on the provocation by the victim, his own disability, the size difference between himself and the victim, and the victim's inappropriate actions toward Rodweller, the weight of the evidence supported a conviction for voluntary manslaughter rather than first-degree murder and possession of an instrument of crime.

---

[3] Otero-Sanchez preserved this claim by raising it in his post-sentence motion. *See* Motion for New Trial and Arrest of Judgment, 8/16/19, at Paragraph 4.

[4] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." *Id.* (citation omitted).

- 9 -

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Olsen***, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

Here, Otero-Sanchez contends that the trial court abused its discretion in denying his motion for a new trial because he believes the jury should have credited his version of events and found him guilty of the lesser offense of voluntary manslaughter. However, in evaluating a challenge to the weight of the evidence, the trial court may not "sit as a thirteenth juror" or grant a new trial merely because the court would have weighed the evidence differently. ***Widmer***, ***supra.*** The evidence adduced at trial, including Rodweller's description of the murder and Otero-Sanchez's boasting about the crime in

the days following, supported the jury's finding that Otero-Sanchez committed the murder with malice and the specific intent to kill. The only facts supporting the theory of voluntary manslaughter were adduced from Otero-Sanchez's statement to police, which the jury was entitled to conclude was self-serving and less reliable than Rodweller's testimony. The facts supporting the voluntary manslaughter defense were not so weighty and indisputable as to clearly outweigh the evidence in support of the first-degree murder conviction. No relief is due.

**IV.**

Finally, Otero-Sanchez argues that the trial court abused its discretion in two evidentiary rulings: first, by allowing the Commonwealth to introduce a photograph of the victim's stab wound into evidence, and second, by allowing the medical examiner to testify outside the scope of his expert report. We address each argument in turn.[5]

---

[5] "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015) (cleaned up).

**A.**

Prior to trial, the Commonwealth informed the trial court and the defense that it intended to introduce two photographs of Robinson's body into evidence during the testimony of the medical examiner. The first depicted the victim's entire torso, including the stab wound, and the second was a close-up of the stab wound. Otero-Sanchez objected to the admission of the second photograph, arguing that it was inflammatory and irrelevant, as the first photograph would adequately show the jury the nature of the wound. The trial court held that the second photograph was admissible, finding that it was not inflammatory and that it was relevant to the medical examiner's testimony. Notes of Testimony, 8/6/19, at 46-50. Even though it determined that the photograph was not inflammatory, the trial court issued the standard cautionary jury instruction for inflammatory photographs prior to the jury's deliberations. Notes of Testimony, 8/8/19, at 110-11.

When passing on the admissibility of photographs of a victim's body, the trial court must engage in a two-step analysis:

> First, the trial court must examine whether the particular photograph is inflammatory. If the photograph is not inflammatory, it may be admitted if it is relevant and can serve to assist the jury in understanding the facts of the case. If the photograph is inflammatory, the trial court must determine whether the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

***Commonwealth v. Hutchison***, 164 A.3d 494, 500-01 (Pa. Super. 2017).

We agree with the trial court that the close-up photograph of the victim's wound is not inflammatory. While it does show a close angle, the single wound is clean, not overly gruesome and does not show bleeding or internal organs. *Compare LeGares*, 709 A.2d 922, 925 (Pa. Super. 1998) (holding that photograph was inflammatory when it depicted "in gory detail the destruction wreaked upon the victim's skull by the 20-gauge shotgun blast"). The photograph is not so grotesque as to inflame the jury and render it incapable of fairly considering the evidence and facts of the case. Moreover, even though the photograph was not inflammatory, the trial court issued a cautionary instruction directing the jury not to allow the photographs to prevent it from carefully and impartially considering all of the evidence.

Because the photograph is not inflammatory, it is admissible if it is relevant to the facts of the case. *Hutchison, supra.* Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Pa.R.E. 401(a). "Since a jury can infer one acted with an intent to kill when injuring a vital area of the body, photographs showing that vital area are relevant to showing appellant had an intent to kill." *Commonwealth v. Spell*, 28 A.3d 1274, 1280 (Pa. 2011). Such photographs can be relevant to the jury's determination of intent to kill even when the medical examiner has already described the injuries in testimony. *Commonwealth v. Robinson*, 864 A.2d 460, 502 (Pa. 2004) (quoting *Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994)). "There is no need

to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt." ***Id.***

Here, the trial court determined that the photograph was relevant and admissible because it would aid the medical examiner's testimony and the jury's understanding of the facts. The trial court further held that the photograph was "essential evidence of the defendant's intent to kill, because there was only a single stab wound." Trial Court Opinion, 2/3/2020, at 11. While Otero-Sanchez did concede that he committed the stabbing, the crucial question at trial was whether he did so with malice and the intent to kill. The trial court correctly determined that the photograph of the wound would be relevant to the jury's determination of Otero-Sanchez's mindset during the killing, as it supported the Commonwealth's argument that Otero-Sanchez inflicted the wound on a vital part of the victim's body because he harbored malice and the intent to kill. ***Spell, supra***; ***Robinson, supra.*** This court has held that such photographs are not cumulative merely because the medical examiner had already testified about the victim's injury, as they can serve as additional essential evidence of intent. ***Robinson, supra.*** The trial court did not abuse its discretion in admitting the photograph.

**B.**

Finally, Otero-Sanchez argues that the trial court abused its discretion by allowing the medical examiner to testify outside the scope of his autopsy

- 14 -

report in response to a question posed by the Commonwealth. The medical examiner testified during his direct examination that the stab wound could have been inflicted by Otero-Sanchez while he stood behind the victim and reached around to stab him in the front of his torso. He argues that this opinion was not in the medical examiner's report and that he did not have adequate notice or the opportunity to retain his own expert to refute the opinion. Otero-Sanchez contends that this testimony undermined his voluntary manslaughter defense because it suggested that he had the time to maneuver behind the victim before stabbing him,[6] indicating that he was not acting in a momentary fit of rage.

We agree with the Commonwealth that this argument is waived. At trial, Otero-Sanchez did not provide any basis for his objection to this testimony. Notes of Testimony, 8/8/19, at 31-32. He first raised his argument that this testimony exceeded the scope of the medical examiner's report in his concise statement pursuant to Pa.R.A.P. 1925(b). A party preserves a claim of evidentiary error for appellate review if he "makes a timely objection" on the record and "states the specific ground, unless it was apparent from the context." Pa.R.E. 103(a)(1)(A)-(B). We have previously found waiver for failure to state the specific ground for the objection on the

---

[6] Otero-Sanchez has one leg and was using a bike as a scooter at the time of the murder.

- 15 -

record when counsel merely said "objection" without further explanation.[7]

***Commonwealth v. Lopez***, 57 A.3d 74, 81-82 (Pa. Super. 2012) (citations omitted). Because Otero-Sanchez's objection during the trial did not state a specific ground for the trial court to consider when passing on the admissibility of the medical examiner's opinion, this argument is waived.

Even if we were to reach the merits of this claim, Otero-Sanchez is not entitled to relief. To the extent that testimony is beyond the fair scope of an expert's report, the defendant must still establish that he was prejudiced by the admission of the testimony. ***Commonwealth v. Ward***, 188 A.3d 1301, 1311 (Pa. Super. 2018). Here, during direct examination, the medical examiner testified that the path of the stab wound was consistent with the victim being stabbed by someone standing behind him and reaching around his torso. On cross-examination, the medical examiner testified that the wound was also consistent with the victim being stabbed by someone standing in front of him.

In its opinion, the trial court cited to ***Commonwealth v. Poplawski***, 130 A.3d 697 (Pa. 2015), and concluded that Otero-Sanchez was not

---

[7] Conversely, we have held that a general objection is sufficient to preserve the issue for review when a party contends that the objected-to evidence is inadmissible for *any* purpose. ***See Commonwealth v. Vucich***, 194 A.3d 1103, 1107 n.1 (Pa. Super. 2018) (citing ***Cominsky v. Donovan***, 846 A.2d 1256, 1258 n.2 (Pa. Super. 2004)). Otero-Sanchez does not argue that the medical examiner's opinion is inadmissible for any purpose; in fact, his argument concedes that the opinion could be relevant to the jury's factual finding of malice and intent to kill.

prejudiced by this testimony because the medical examiner opined only that the wound was consistent with both potential avenues of attack. Trial Court Opinion, 2/3/2020, at 12-13. In **Poplawski**, the expert witness testified regarding the order in which a victim sustained certain injuries, and the defendant objected that the opinion was outside the scope of the expert's report. Our Supreme Court held that the defendant was not prejudiced by this opinion testimony when he elicited additional testimony on cross-examination that the wounds "were just as likely caused in a manner consistent with the Commonwealth's hypothetical as they were with the defendant's alternate hypothetical." **Poplawski, supra**, at 721. Similarly, the medical examiner's testimony here confirmed only that both the Commonwealth and Otero-Sanchez had presented plausible theories regarding where Otero-Sanchez was standing when he stabbed the victim, and he did not credit either theory over the other. Because Otero-Sanchez cannot establish that he was prejudiced by this testimony, this claim is meritless.

Judgment of sentence affirmed.

Judge Kunselman joins the memorandum.

Judge Nichols did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/20