**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Eduardo PADILLA, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.
Filed July 8, 2004.

Kelly S. Kline, Asst. Dist. Atty., Reading, for Com., appellant.

James M. Polyak, Reading, for appellee.

Before: STEVENS, PANELLA, and OLSZEWSKI, JJ.

STEVENS, J.

¶ 1 This is an appeal from the orders entered by the Court of Common Pleas of Berks County granting Appellee's omnibus pre-trial motion to suppress his verbal statements and granting his writ of *habeas corpus* resulting in the dismissal of the charges.[1] On appeal, the Commonwealth claims that the trial court erred in suppressing Appellee's verbal statement when the record establishes Appellee waived his *Miranda* rights,[2] in suppressing Appellee's statement when it failed to apply the cor-

---

**1.** In accordance with the requirements of Pa. R.A.P. 311(d) and Pa.R.A.P. 904(e), the Commonwealth has certified in its notice of appeal that the suppression order terminates or substantially handicaps its prosecution. *See*

*Commonwealth v. Malinowski,* 543 Pa. 350, 671 A.2d 674 (1996).

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rect standard and ignored the totality of the circumstances when determining the voluntariness of the *Miranda* waiver, in granting Appellee's writ of *habeas corpus* when it considered evidence from the criminal complaint not testified to at either the preliminary hearing or pre-trial suppression hearing, and in granting Appellee's writ of *habeas corpus* when the Commonwealth established a *prima facie* case on the offenses charged. We reverse and remand for further proceedings.

¶ 2 The trial court states the facts as follows:

At approximately 10:40 AM, June 27, 2000, Reading Police Officer Gregory Joy was dispatched to the Liberty Hat Company, 7 North Nine Street, Reading to investigate a robbery. Upon arrival at 10:43 AM, Officer Joy met with Liberty Hat owner Peter Morrell, age 81, who appeared shaken, upset and was limping. Mr. Morrell told the officer two Hispanic males had entered the store, at approximately 10:40 AM, one wearing a white shirt, the other a brown checkered shirt. He described their heights as 4 feet 5 inches and 5 feet 9 inches. He said one of the males proceeded to the back of the store and one waited up front. The man at the back of the store walked to the front carrying two cartons of cigarettes and attempted to leave. Mr. Morrell stepped in front of him and the man said "Get off my sneaker." Mr. Morrell replied "What about my cigarettes?" A struggle ensued, the Hispanic male pushed Mr. Morrell and the store owner fell to the ground. As the assailant left, he dropped a carton of cigarettes. Officer Edward Campos, an evidence technician who also had arrived at the scene, processed the carton and lifted six latent fingerprints.

At approximately 11 AM Joseph Paxton, Mr. Morell's brother-in-law, and Mr. Paxton's wife, entered the store for a visit and found Mr. Morrell seated in a chair with a gash on his head, a swollen knee and blood running down his leg. The Paxtons transported Mr. Morrell to the Reading Hospital Emergency Room where Dr. David Woynarowski examined him. Mr. Morrell told the doctor he had been robbed and had confronted the robber who then hit him in the chest and knocked him to the ground. He complained of right knee and thigh pain and injuries to his chest. Dr. Woynarowski observed a large contusion over the knee and swelling. X-rays revealed broken ribs. Given Mr. Morrell's condition and the need for further tests, Dr. Woynarowski admitted him to the hospital.

Mr. Morrell discharged himself from the hospital on July 3, 2000. On July 10, 2000, Mr. Morrell was found dead in his home. Forensic Pathologist Dr. Neil Hoffman performed an autopsy of Mr. Morrell on the afternoon of July 10 and determined the cause of death to be a massive soft tissue hematoma of the right thigh due to thigh muscle strains and sprains, which in turn was due to Mr. Morrell's fall during the robbery. Specifically, Mr. Morrell died as a result of bleeding into the thigh causing him to have hypovolemia, i.e. too little circulating blood to sustain organs including the heart. Dr. Hoffman concluded that the manner of Mr. Morrell's death was homicide.

On July 13, 2000, a latent fingerprint lifted by Officer Campos arrived at the Pennsylvania State Police Laboratory at Bethlehem. The Laboratory searched the Automated Fingerprint Identification System and by way of a report dated August 2, 2000, identified the print as the left index finger of the Defendant.

On September 27, 2001, C.I. Christopher Santoro and C.I. Joel Avram of the Reading Police Department went to the Berks County Prison to speak with the Defendant after learning he had been placed there on a probation/parole violation. C.I. Santoro read the Miranda warnings to the Defendant in English and said the Defendant understood and waived them. The officers told the Defendant they were there to investigate a robbery that had occurred at a store located at 7 North Nine Street, Reading in June 2000. The Defendant denied knowing anything about the robbery. C.I. Santoro then told him two persons had entered the store, one of them had taken two cartons of cigarettes and the police found the Defendant's fingerprint on a carton that had been dropped by one of the robbers. The Defendant then said he remembered and that on the day in question he met with a Hispanic male acquaintance who told him he knew a place where they could steal cigarettes. The two men walked to Liberty Hat and the acquaintance stayed in front of the store where he was to distract the owner. The Defendant proceeded to the back of the store and removed two cartons of cigarettes from the display shelf behind the counter. The Defendant said he heard someone yell "Someone is coming," ran from the store and in the process dropped a cigarette carton. The Defendant said he never saw or touched an old man. C.I. Santoro then showed the Defendant a newspaper article explaining that Mr. Morrell had died as a result of the robbery. The Defendant's eyes welled up with tears but he continued to deny having had any contact with the victim. When C.I. Santoro asked the Defendant why he had left the area at about the same time as the robbery, the Defendant said he had gone to New Jersey looking for work. On October 2,

2001, C.I. Santoro returned to the Berks County Prison for another interview, but the Defendant told him he had nothing to say and that he had spoken to a New Jersey lawyer.

On October 11, 2001, the Commonwealth charged the Defendant with the offenses of criminal conspiracy 18 Pa. C.S.A. Section 903(a)(1)(2), criminal homicide 18 Pa.C.S.A. Section 2501(a), murder of the second degree 18 Pa. C.S.A. Section 2502(b), aggravated assault 18 Pa.C.S.A. Section 2702(a)(1), robbery 18 Pa.C.S.A. Section 3701(a)(1)(i)(v), simple assault 18 Pa. C.S.A. Section 2701(a)(1), retail theft 18 Pa.C.S.A. Section 3929(a)(1) and receiving stolen property 18 Pa.C.S.A. Section 3925(a). After a preliminary hearing held on November 20, 2001, District Justice Wally Scott bound over all charges. On June 11, 2002, defense counsel filed an Omnibus Pretrial Motion that, inter alia, moved for suppression of evidence and a writ of habeas corpus.

Trial Court Opinion 1/22/03 at 1–2.

¶ 3 The trial court held a hearing on October 24, 2002. On January 22, 2003, the trial court entered an order suppressing the statements made by Appellee and granting the writ of *habeas corpus,* simultaneously dismissing the charges filed against Appellee. The Commonwealth filed an appeal to this Court and the trial court ordered the Commonwealth to file a statement pursuant to Pa.R.A.P.1925(b). The requested statement was filed and the trial court filed a Pa.R.A.P.1925(a) opinion.

¶ 4 The Commonwealth's first two issues pertain to the suppression of the evidence and will be discussed together. The Commonwealth first argues that the trial court erred in suppressing Appellee's statements where the Commonwealth established by a preponderance of the evi-

dence that Appellee validly waived his *Miranda* rights; and further, the trial court ignored the totality of the circumstances and other uncontradicted facts of record when deciding whether the rights were voluntarily waived.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998).

*Commonwealth v. Keller*, 823 A.2d 1004, 1008 (Pa.Super.2003), *appeal denied*, 574 Pa. 765, 832 A.2d 435 (2003).

¶ 5 The trial court determined that Appellee did not possess sufficient knowledge or fluency in the English language to validly waive his *Miranda* rights; and therefore, granted the motion to suppress. The trial court relied on the testimony of three witnesses from the Berks County Probation and Parole Department and a fourth witness, the assistant public defender who had represented Appellee in a prior hearing, to conclude that Appellee could not understand the warnings. Upon review of the record, we cannot agree that the testimony of these four witnesses supports the trial court's findings.

■ ¶ 6 Assistant Chief Richard Forry testified that he had contact with Appellee at a prior hearing. N.T. 10/24/02 at 35. Reviewing his notes of the day of the hearing, Mr. Forry testified that Appellee did not have a thorough understanding of the English language. N.T. 10/24/02 at 34. An interpreter was therefore provided for Appellee at the hearing. N.T. 10/24/02 at 41. At the hearing, Appellee was provided with a written set of rules and conditions of probation and parole in Spanish. N.T. 10/24/02 at 42. Next, Paco Vasquez of the Adult Probation Office testified. He similarly indicated that at Appellee's hearing, a translator was provided and that the written rules and conditions of probation and parole were provided to Appellee in Spanish. N.T. 10/24/02 at 51–52. The next witness, James Sweitzer of the Adult Probation Office, testified that he had prepared a plea sheet for Appellee in which he noted Appellee was Spanish speaking. N.T. 10/24/02 at 56. However, Mr. Sweitzer did not have any contact with Appellee when he prepared the form and simply relied on the translator's presence in the courtroom. N.T. 10/24/02 at 56. Lastly, Attorney Richard Joyce of the Public Defender's Office testified. Attorney Joyce indicated he had communication problems with Appellee; and therefore, he sought an interpreter for the court proceedings. N.T. 10/24/02 at 60. Attorney Joyce did not have a specific recollection of what matters he attempted to discuss with Appellee or what occurred which led him to seek a translator in the first instance. N.T. 10/24/02 at 65.

¶ 7 Contrary to the findings of the trial court, the testimony of these four defense witnesses is unclear as to whether Appellee could understand verbal communications. Rather, this testimony lends supports to the testimony of the Commonwealth witness, Criminal Investigator ("C.I.") Christopher Santoro, that Appellee could not read and write English.

¶ 8 C.I. Santoro testified that on September 27, 2001 he went to question Appellee at the Berks County prison. N.T.

10/24/02 at 10. He read Appellee his *Miranda* rights prior to questioning him. N.T. 10/24/02 at 7. Appellee indicated that he understood the rights, was willing to give a statement, and did not wish to consult with an attorney. N.T. 10/24/02 at 9. Appellee told C.I. Santoro that he could not read and write English but that he understood the language. N.T. 10/24/02 at 12. At a second visit, on October, 2, 2001, Appellee told C.I. Santoro that he had spoken to his attorney and had nothing further to say. N.T. 10/24/02 at 16. The last time C.I. Santoro saw Appellee was when he was transporting him. N.T. 10/24/02 at 17. Television cameras were present at the site and Appellee repeatedly stated, in English, to the cameras, "I will win this case." N.T. 10/24/02 at 17. C.I. Santoro testified that he had no indication that Appellee could not understand the English language; rather, Appellee spoke quite well. N.T. 10/24/02 at 27.

¶ 9 In addition to C.I. Santoro's testimony, we note that Appellee had familiarity with criminal proceedings based on his past record which included three prior cases. N.T. 10/24/02 at 57. Under the totality of the circumstances test, we must conclude that although the record supports a determination that Appellee could not read or write English and needed an interpreter to aid in his comprehension of written documents, the trial court erred when it determined the record supports the finding that Appellee did not understand verbal communication in the English language based on the uncontradicted testimony of

C.I. Santoro. Although Attorney Joyce's testimony indicates Appellee had some unfamiliarity with the language, he could not recall any details of the matters discussed and what prompted the need for the interpreter. Accordingly, we must reverse the order of the trial court suppressing the statements made by Appellee and remand for further proceedings.[3]

¶ 10 Orders reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

**3.** As the granting of *habeas corpus* relief in this case was the result of the court's belief that the statements made by Appellee should be suppressed, we must reverse the court's grant of Appellee's writ of *habeas corpus* and dismissal of the charges. *See Keller*, 823 A.2d at 1011 (finding reversal of grant of writ of *habeas* corpus warranted based solely on wrongful suppression and further that suppression of evidence does not necessitate dismissal of charges). We do not discuss the issues relating to the writ of *habeas corpus* further in light of this determination. On remand, the trial court must consider if the Commonwealth's evidence, including the previously excluded statement, supports a *prima facie* case for the offenses charged.