J-S65035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE LUIS FLORES-MEDINA | : | |
| | : | |
| Appellant | : | No. 520 MDA 2019 |

Appeal from the PCRA Order Entered March 5, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003446-2015

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 30, 2019**

Appellant, Jose Luis Flores-Medina, *pro se*, appeals from the order entered March 5, 2019, that dismissed, without a hearing, his first petition filed under the Post Conviction Relief Act ("PCRA"),[1] stemming from his jury trial convictions for rape by forcible compulsion, unlawful contact with minor (relating to sexual offenses), and corruption of minors.[2]  We affirm the order of the PCRA court.

The facts underlying this appeal are as follows.  On April 11, 2015, the seventeen-year-old victim, E.M. ("Victim"), was staying at the home of her aunt, M.N.; Victim slept on an air mattress in a bedroom occupied by M.N.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 3121(a)(1), 6318(a)(1), and 6301(a)(1)(i), respectively.

and Appellant. **See** Trial Court Opinion, filed August 30, 2016, at 3-4. M.N. had taken medication that night before she went to sleep. N.T. Trial at 147-48. During the middle of the night, Appellant began to touch Victim. **Id.** at 148. As Victim later testified at trial, Appellant then touched her "private part" with "[h]is private part." **Id.** at 149. "Appellant had his hand over [V]ictim's mouth while this occurred. The next morning, Appellant drove [V]ictim home, [V]ictim reported the incident to her mother and grandmother, and [V]ictim was then taken to the hospital by her mother for a medical examination." Trial Court Opinion, filed August 30, 2016, at 3 (citing N.T. Trial at 149-51).

> The examination of [V]ictim [by a sexual assault nurse examiner] revealed tenderness and superficial redness of skin to the labia minora surrounding the vagina, a laceration and redness to the posterior fourchette at the bottom of the vagina, and an abrasion between [V]ictim's vaginal wall and hymen. [N.T. Trial] at 202-03. Dried secretions were also observed on the labia majora, which were collected as evidence. **Id.** at 207-08. . . . Detective Randall Zook ("Zook") of the Lancaster City Bureau of Police ("LCBP") testified that on April 13, 2015, Appellant voluntarily provided a buccal swab, which was later sent for DNA analysis with evidence taken of [V]ictim by the nurse . . . [**Id.**] at 238, 249-55. . . . [T]he sperm found on [V]ictim's external genitalia was a match with Appellant's DNA. **Id.** at 301-02, 315-19.

**Id.** at 3-4.

On December 30, 2015, Appellant filed an omnibus pretrial motion, including a motion to suppress evidence. "Immediately prior to trial, a suppression hearing was held on Appellant's pretrial motion challenging his statement to police, consent to search his home, and consent to take a buccal

swab for DNA testing." PCRA Court Opinion, filed May 9, 2019, at 1 (citing

N.T Trial at 4-5).[3]

> At the suppression hearing, Detective Robert Deeter ("Deeter"), LCBP, testified that he asked Appellant if he would be willing to speak to police and give consent to a search of his apartment. N.T. [Trial] at 6-7. Deeter spoke to Appellant in English and Appellant responded appropriately in English. *Id.* at 7. Appellant signed the consent form without asking any questions or indicating he did not understand. *Id.* at 8-9. A female who was present with Appellant also spoke English. *Id.* at 11. Appellant never expressed any concern or reservation about being able to communicate in English, nor did he state he could not speak English. *Id.* at 13. If he had, Deeter would have called for a Spanish-speaking officer to interpret. *Id.*
>
> Officer Gareth Lowe, Jr. ("Lowe"), LCBP, also spoke with Appellant in English about going to the police station for an interview, and Appellant agreed. [*Id.*] at 16. At the police station, Appellant was read his ***Miranda***[4] rights in English [by Detective Zook, in Officer Lowe's presence], [Appellant] responded to every question in English, and he read aloud the language at the bottom of the ***Miranda*** form in English. *Id.* at 19-20. When he signed the form, Appellant never said he was confused, nor did he ask for a form in Spanish. *Id.* at 26. Lowe later read Appellant a consent form asking to obtain a buccal swab for DNA testing. *Id.* at 21-22. Appellant responded by talking about how DNA is used in television programs and gave his consent because he wanted to prove he was innocent. *Id.* at 23. During the 2 3/4 hour interview, Appellant spoke English the entire time and never asked for the definition of any words. *Id.* at 20-21. Lowe did not believe

---

[3] The notes of testimony for the suppression hearing were included in the same volume as the notes of testimony for the first day of the trial. The notes of testimony are paginated consecutively from the suppression hearing through to the verdict. We have thereby chosen to refer to all of these notes of testimony as "N.T. Trial" throughout this decision, including the notes from the suppression hearing.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

there was any language barrier which prevented Appellant from understanding what was happening. *Id.* at 29.

Detective Zook testified that he offered a Spanish-speaking officer if Appellant had any issues with language. [*Id.*] at 35. However, the entire conversation with Appellant was in English and Appellant did not appear to be confused. *Id.* at 31-32, 38. When Zook asked him if he read English, Appellant stated he did. *Id.* at 34-35. When Zook asked if he could write English, Appellant stated he could write some English. *Id.* at 35. Appellant then signed the *Miranda* rights form. *Id.* at 37.

The recorded interview was played for the court. [*Id.*] at 39-40; Commonwealth Suppression Hearing Exhibit 5. The court observed Appellant in the DVD and saw that he could read, understand, and speak the English language. [*Id.*] at 41-42. Appellant also knowingly, intelligently and voluntarily waived his *Miranda* rights. *Id.* at 41. Appellant was asked every question in English, he answered every question appropriately in English almost simultaneously, and he did not appear to be confused. *Id.* at 42. Trial counsel concurred, noting that any confusion shown later in the DVD was not based on the English language. *Id.* at 42-45.

[M.N.] testifying for the defense at the suppression hearing, stated she lived with Appellant and they mostly communicated in Spanish. [*Id.*] at 65-67. However, Appellant did understand enough English to carry on a conversation. *Id.* at 67-69. In fact, Appellant communicated in English with another female who lived with them. *Id.* at 68.

Appellant testified at the suppression hearing and stated he moved to Lancaster eight years ago after living in Milwaukee for two years. [*Id.*] at 73-74. He could speak basic English that he learned in Puerto Rico. *Id.* at 72-73. Appellant claimed he had difficulty reading the *Miranda* rights form, he signed it without understanding what was written, and he only answered the questions "to get that out of the way." *Id.* at 77-78. Appellant also claimed he did not understand the consent for the buccal swab. *Id.* at 78. Finally, Appellant claimed he did not understand parts of the interview. *Id.* at 79. Appellant stated he asked for an interpreter three times on the way to the police station and was told there would be one when they got to the station. *Id.* At the station, he was told an interpreter was not available. *Id.* at 80.[11]

<sup>11</sup> In rebuttal, Detective Zook testified that he did not recall Appellant asking for an interpreter and he did not document such a request in his report, although it was possible. N.T. [Trial] at 84-85.

Following the suppression hearing, the [trial] court found that Appellant's testimony was not credible, particularly his assertion that he had a limited ability to understand or speak the English language. [*Id.*] at 88-89. The court noted that during his testimony Appellant answered at least two questions before there was any translation. *Id.* at 81. Furthermore, [the trial court concluded that,] as noted in the video, Appellant clearly understood the English language and responded appropriately to every question almost simultaneously. *Id.* at 89.

*Id.* at 25-27. Based upon these findings of fact, the trial court held that "Appellant was able to read, speak, and understand the English language, he voluntarily went to the police station, he was not in custody, he knowingly and voluntarily waived *Miranda* rights, and he agreed to speak to police." *Id.* at 1 (citing N.T. Trial at 88-89); *see also id.* at 28. The trial court also concluded that Appellant had "voluntarily consented to the buccal swab and a search of his residence." *Id.* at 1 (citing N.T. Trial at 89). The trial court therefore denied Appellant's suppression motion. *Id.* (citing N.T. Trial at 90).

At trial, during the Commonwealth's case-in-chief, a deputy sheriff informed the trial court that one of the jurors had lied about her criminal record during *voir dire*; that juror was removed from the jury and replaced with the first alternate juror. N.T. Trial at 270-71. On March 3, 2016, the jury convicted Appellant of the aforementioned crimes.

On March 8, 2016, after Appellant was convicted but prior to his sentencing --

the bailiff informed the [trial] court of a conversation he had with one of the jurors prior to deliberations where the juror wanted to access his cell phone to review his notes. Notes of Testimony, Chambers Meeting, 3/10/16, at 2 . . . Consequently, the court held a chambers meeting with counsel on March 10, 2016 to discuss the matter, at which time the bailiff reported that when he retrieved a cell phone from one of the jurors immediately prior to deliberations the juror asked if he could keep his phone so he could "transfer" some of his notes. *Id.* at 2-3. The bailiff said no and took the phone. *Id.* at 3. . . . [Appellant's trial] counsel stated that during trial he was focused on the juror in question and he did not see that juror taking any notes. [*Id.*] at 10. Counsel looked at all the jurors intermittently throughout the trial and never saw anyone with a cell phone. *Id.* at 12. Moreover, based on his conversation with the juror in question and nine other jurors after the trial was over, counsel was satisfied that this situation was not prejudicial to the defense. *Id.* at 10-11. If he believed otherwise, counsel would have asked for a mistrial. *Id.* at 14-15.

PCRA Court Opinion, filed May 9, 2019, at 23-24 (some formatting).

Appellant filed a direct appeal, and this Court affirmed his convictions but vacated and remanded for resentencing on all counts. ***Commonwealth v. Flores-Medina***, 168 A.3d 358 (Pa. Super. 2017) (unpublished memorandum). Appellant filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied. ***Commonwealth v. Flores-Medina***, 170 A.3d 1044 (Pa. 2017).

On October 12, 2017, Appellant was resentenced to 8½ to 20 years of confinement. He did not file a direct appeal following resentencing.

On August 22, 2018, Appellant filed his first, *pro se*, timely PCRA petition, written in English. On August 29, 2018, the PCRA court appointed counsel to represent Appellant. On December 27, 2018, PCRA counsel filed a petition to withdraw and a "no merit" letter pursuant to ***Commonwealth v.***

***Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  On January 14, 2019, Appellant filed *pro se* a response to PCRA counsel's motion to withdraw, again written in English. On January 17, 2019, the PCRA court entered a notice of intent to dismiss all claims without a hearing pursuant to Pa.R.Crim.P. 907 ("Rule 907 Notice"). Appellant *pro se* filed an application for extension of time to file a response to the Rule 907 Notice, also written in English, which the PCRA court granted; Appellant then filed, in English, a *pro se* response to the Rule 907 Notice.  On March 5, 2019, the PCRA court dismissed Appellant's petition and  granted counsel's motion to withdraw.  On March 28, 2019, Appellant filed, *pro se*, a timely notice of appeal in English, along with a request for transcripts and an application to proceed *in forma pauperis* on appeal, both in English.  On April 22, 2019, Appellant filed his *pro se* concise statement of errors complained of on appeal in English.[5]

In his *pro se* brief to this Court, written in English, Appellant presents the following issues for our review:

> ***I.***     Did the trial court abuse its discretion where the guilty verdict to the charge of rape was against the weight of the evidence and necessitates a new trial pursuant to Pa.[R.]Crim. P. 607?
>
> ***II.***     Did the trial court abuse its discretion where the evidence was insufficient as well as weak and inconclusive as to the elements of rape by forcible compulsion were not proven beyond a reasonable doubt?

---

[5] The PCRA court entered its opinion on May 9, 2019.

***III.*** Did the trial court abuse its discretion by imposing a manifestly excessive and unreasonable sentence where there were no additional aggravating circumstances to warrant the harsh sentence?

***IV.*** Whether trial counsel was ineffective for failing to object and not seeking a new trial when it brought to the [trial c]ourt's attention that one of the jurors lied about [her] criminal history?

***V.*** Whether trial counsel was ineffective for not requesting a mistrial when it was discovered that a juror was recording notes on his cell phone, in order to use the notes in the jury room?

***VI.*** Whether Appellate counsel was ineffective during the direct appeal stage of the proceedings when she failed to raise the following properly preserved suppression hearing claims:

> *(a) The statement made by Appellant should be suppressed when prior, and during his initial interview he requested a translator, due to lack of understanding English;*
>
> *(b) The Appellant's challenge as to his consent to search his home should have been suppressed where he barely understood English; therefore could not sufficiently understood what he was giving consent to;*
>
> *(c) The Appellant's challenge to his consent of his DNA, where he could barely understand English; and thus to what he was consenting to.*

***VII.*** Did the PCRA court abuse its discretion by denying Appellant's Sixth Amendment claim of ineffective counsel, where counsel failed to preserve and protect Appellant's weight and sufficiency claim as well failing to preserve the sentencing claim?

Appellant's Brief at 5-6 (suggested answers omitted).

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." ***Commonwealth v. Medina***, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018)), *reargument denied* (July 17, 2019).

- 8 -

Preliminarily, we note that Appellant's first three appellate claims are waived, because he could have challenged these alleged errors as part of a direct appeal but failed to do so. *See* 42 Pa.C.S. § 9544(b) ("for purposes of [the PCRA], an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

Appellant's remaining issues allege ineffective assistance of counsel.

> Counsel is presumed to be effective.
>
> To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> A failure to satisfy any of the three prongs of this test requires rejection of a claim of ineffective assistance.

*Medina*, 209 A.3d at 1000 (citations and internal brackets and quotation marks omitted) (some additional formatting).

Appellant's fourth issue contends that his "trial counsel was ineffective for failing to object and not seeking a new trial when it [was] brought to the [trial] court's attention that one of the jurors lied about her criminal history." Appellant's Brief at 26. "The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion exists even after the jury has been impaneled and the juror sworn." *Commonwealth v. Marrero*, 217 A.3d 888, 890 (Pa. Super. 2019) (quoting *Commonwealth v. Carter*, 643 A.2d 61, 70 (Pa.

1994)). In the current action, the dishonest juror was removed and replaced with an alternate juror. N.T. Trial at 270-71. This removal and replacement occurred before the jury began its deliberations, and the eliminated juror did not vote to convict Appellant. Accordingly, the trial court did not abuse its discretion, and Appellant has failed to establish that there was a reasonable probability of a different outcome and consequently cannot establish prejudice and, in turn, ineffective assistance of trial counsel. *See Medina*, 209 A.3d at 1000.

Next, Appellant argues that "trial counsel was ineffective for not requesting a mistrial when it was brought to the [trial] court['s] attention that a juror was using his phone to record and access notes[.]" Appellant's Brief at 29. Appellant maintains that he "can establish prejudice where anyone **could have** accessed this information and/or **could have** assisted the juror in making his decision." *Id.* at 30 (emphasis added).

> An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. *See Carter by Carter v. U.S. Steel Corp.*, 529 Pa. 409, 604 A.2d 1010, 1015–16 (1992) (plurality). The relevant inquiry is whether the extraneous influence caused "a reasonable likelihood of prejudice." *Id.* at 1016; *see also Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733, 739 (1983) (requiring showing that contact between member of the jury and court officer resulted in "a reasonable likelihood of prejudice" to defendant.). . . . **The burden is on the party claiming prejudice.** *Id.*

*Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. 2012) (emphasis added).

In the current action, Appellant presents no evidence that the juror in question actually took notes on his cellular telephone; no one, including Appellant's own trial counsel, saw that juror or any of the other jurors taking notes on a cellular phone. PCRA Court Opinion, filed May 9, 2019, at 24 (citing N.T., 3/10/2016, at 10, 12). Assuming this juror had been taking notes on his cell phone, Appellant has made no proffer that anyone else accessed said notes or somehow used them to assist the juror in making his decision; ergo, Appellant has failed to establish that any extraneous influence even existed. The juror also did not bring his phone into the jury room, so any notes thereon could not have influenced jury deliberations. *Id.* at 23 (citing N.T., 3/10/2016, at 2-3). Appellant hence has failed to meet his burden that a reasonable likelihood of prejudice resulted from an extraneous influence. *Sneed*, 45 A.3d at 1115. As he is unable to establish prejudice, he cannot satisfy one prong of the test for ineffective assistance of counsel, and this entire claim that trial counsel was ineffective, his fifth issue overall, thereby fails. *See Medina*, 209 A.3d at 1000.

Appellant next urges this Court to find that his appellate counsel was ineffective for "fail[ing] to raise the following properly preserved suppression hearing claims[:]

> 1) The statement made by Appellant during the initial interview should have been suppressed when Appellant repeatedly requested a translator on the ride from his home to the police station;
>
> 2) The consent from Appellant to search his home should have been suppressed due to the fact that he barely

understood English and could not have sufficiently understood what he was consenting to;

3) The consent to give his DNA swab should have been suppressed where he did not totally understand English and therefore he was unable to sufficiently understand the situation.

There is a huge difference between Appellant being able to understand English enough to carry a generic conversation and the extent of the legal ramification as to what was being told to the Appellant as far as exactly what rights he had and what he would have able to decline without officially being under arrest.

Appellant's Brief at 33-34.

In *Commonwealth v. Padilla*, 854 A.2d 549, 552-53 (Pa. Super. 2004), this Court found that the defendant's waiver of his *Miranda* rights was voluntary, "although the record support[ed] a determination that [the defendant] could not read or write English and needed an interpreter to aid in his comprehension of written documents[.]" This Court reached such a conclusion, because: (1) prior to giving his statement, the investigating officer had read the defendant's *Miranda* rights to him prior to questioning him, and the defendant had indicated to the officer that he understood his rights and was willing to give a statement; (2) the officer testified that the defendant spoke English well; and (3) the defendant had familiarity with criminal proceedings. *Id.*

Appellant's circumstances are analogous to those of *Padilla*. *Id.* Just as the defendant in *Padilla* had indicated to the officer that he was willing to give a statement after the officer had read his *Miranda* rights to him, Appellant agreed to give a statement to police after Detective Zook read his

*Miranda* rights aloud in English and after Appellant read the testament at the end of the form out loud in English. PCRA Court Opinion, filed May 9, 2019, at 25 (citing N.T. Trial at 16, 19-20). The defendant in *Padilla* indicated to the officer that he understood his rights, and Appellant similarly indicated to Officer Lowe and to Detective Zook that he understood his rights when he signed the *Miranda* form. *Id.* at 25-26 (citing N.T. Trial at 26, 37); *see also id.* at 25 (citing N.T. Trial at 29) (Officer Lowe believed that Appellant understood what was happening). Like the officer in *Padilla* who testified that Appellant spoke English well, Detective Deeter testified that Appellant responded appropriately in English, and Detective Zook testified that Appellant told him that he could read English. *Id.* at 25-26 (citing N.T. Trial at 7, 34-35). The trial court also watched the recording of Appellant's police interview and found that Appellant "answered every question appropriately in English almost simultaneously" with being asked. *Id.* at 26 (citing N.T. Trial at 42). Appellant's own witness, M.N., even conceded that Appellant was able to converse in English. *Id.* (citing N.T. Trial at 67-69). Finally, although Appellant did not have the familiarity with criminal proceedings that the defendant in *Padilla* had, Appellant told Officer Lowe that he was familiar with the purpose of DNA testing before he consented to giving a buccal swab. *Id.* at 25 (citing N.T. Trial at 23).

In addition to the parallels to *Padilla*, 854 A.3d at 552-53, we observe that the record is replete with examples of Appellant's use and comprehension

of the English language. His PCRA petition, response to PCRA counsel's motion to withdraw, request for extension of time to respond to the Rule 907 Notice, response to the Rule 907 Notice, notice of appeal, request for transcripts, application to proceed *in forma pauperis*, statement of errors complained of on appeal, and brief to this Court were all *pro se* and written in English. There is no indication in any of these documents that they were composed with the assistance of an interpreter or a third party.

Consequently, Appellant's contention that he does not understand the English language and, accordingly, should have been provided with an interpreter prior to making a statement to police or consenting to a search is meritless. "Counsel will not be deemed ineffective for failing to raise a meritless claim." ***Sneed***, 45 A.3d at 1115; ***see also Medina***, 209 A.3d at 1000. Ergo, Appellant is not entitled to relief on his penultimate claim or any of its subsections.

Appellant's final challenge is that "[a]ppellate counsel as well as PCRA counsel was ineffective for failing to address the several instances of trial counsel's ineffectiveness, stemming from his failure to file a timely post-sentence motion." Appellant's Brief at 37. This issue was not included in Appellant's statement of errors complained of on appeal and hence is waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not

raised in accordance with the provisions of this paragraph (b)(4) are waived.").[6]

For the reasons given above, we conclude that Appellant's issues raised on appeal are waived or meritless. Having discerned no error of law, we affirm the order below. *See Medina*, 209 A.3d at 996.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2019

---

[6] In fact, Appellant made no mention of PCRA counsel at all in his concise statement of errors complained of on appeal, and the statement's only reference to appellate counsel was in a claim identical to the sixth issue, discussed above.